# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

Case No. 9:15-cv-81386-KAM

ALEX JACOBS,

    Plaintiff,

v.

QUICKEN LOANS, INC.,
a Michigan corporation,

    Defendant.

_____/

**PLAINTIFF'S MOTION TO COMPEL INSPECTION,
RESPONSE TO REQUEST FOR PRODUCTION, AND TO CONTINUE
DEADLINE FOR THE SUBMISSION OF PLAINTIFF'S EXPERT WITNESS REPORT,
AND REQUEST FOR ORAL ARGUMENT**

| | |
|---|---|
| Wites & Kapetan, P.A. | Law Offices of Steven C. Holzman, PA |
| Attorneys for Plaintiff and the Class | Attorneys for Plaintiff and the Class |
| 4400 North Federal Highway | 4400 North Federal Highway |
| Lighthouse Point, FL 33064 | Lighthouse Point, FL 33064 |
| 954-570-8989/954-354-0205 (fax) | 561-789-5366 |
| Marc A. Wites | Steven Holzman |
| Fla Bar No. 24783 | Fla. Bar. No. 667617 |
| mwites@wklawyers.com | scholzmanlaw@gmail.com |

Plaintiff Alex Jacobs, individually and on behalf of the Class, hereby files this Motion to Compel Inspection and Response to Request for Production, to Continue Deadline for the Submission of Plaintiff's Expert Witness Report, and for Oral Argument, and states as follows:

1. This Motion seeks to compel Defendant to provide discovery that Plaintiff requires to prepare his motion for class certification and for trial. As evidenced by Defendant's representatives' deposition testimony, and the declaration of Plaintiff's expert witness (*see* Plaintiff's Expert's Declaration attached hereto as Exhibit A), the discovery sought is simple and straight forward, and requires very little time and effort for Defendant to compile and make available.

2. The Motion concerns two main issues.[1] First, Plaintiff seeks data available from Defendant's database that shows the date and other identifying information for each call that Defendant's automatic telephone dialing system placed to a lead that Defendant obtained from the Experian Program. In fact, Defendant's database identifies all of the numbers that it called as cell phones or land lines, such that this information is easily and readily accessible to Defendant. Even though Defendant's database contains such information, Defendant protests, claiming that Defendant's own records may not be reliable, that some of the phone numbers Defendant has listed as cell phone numbers may not actually be cell phone numbers, and therefore it need not produce the discovery. Defendant's argument is without support; the data is clearly within the scope of discovery, and Plaintiff will – through Plaintiff's counsel and expert and at their expense – confirm whether the numbers called are cell phones. Moreover, Defendant's argument that its own records may not be reliable, and thus justify withholding such data from discovery, is simply without support, and baseless on its face.

---

[1] A third issue that concerns the production of a deposition transcript is detailed below.

1

3. In fact, Defendant's incredible argument that its own records are unreliable only demonstrate why Defendant should produce, as requested by Plaintiff, the entire list of all numbers that it called during the Class Period from the Experian Program. As detailed herein, the production of such data would not require any more time or effort than producing a subset of such data, or any of the data that Defendant has compiled thus far (*see* Exhibit A), and Plaintiff can easily determine, at the expense of Plaintiff's counsel, which of such numbers are cell phones. Thus, while the Court should order Defendant to produce all of the Experian Program call records, the Court should at the very least order Defendant to produce the records for those calls which Defendant identifies as having been made to a cell phone number.

4. Defendant also seems to claim that the discovery is too costly and difficult to produce, and disproportionate. However, as detailed below, no more than **2 hours of human and computer time** is required for Defendant to produce this information, and it is highly unlikely that Defendant has not already determined and extracted the very same information in connection with its investigation of the case.

5. Second, Plaintiff wishes, for several reasons, to inspect Defendant's computer systems and the database detailed above. First, Plaintiff must prove that Defendant's computer system is an automatic telephone dialing system subject to the Telephone Consumer Protection Act to prevail on the single claim asserted on behalf of the Class, and Defendant has declined to admit or stipulate to this element of Plaintiff's claim. Second, the only way for Plaintiff to rebut Defendant's arguments that the discovery sought by Plaintiff is burdensome, difficult and/or costly to produce is to allow Plaintiff to inspect the system and its database. The inspection of Defendant's system will require approximately **90 minutes**, and the inspection of the database

approximately **10 minutes** of the total inspection time of 90 minutes, and the inspection will not require any alteration, destruction, or improper manipulation of Defendant's systems or database. *See* Exhibit A.

6. Moreover, the inspection can all be accomplished through a remote access to Defendant's system and database, where Defendant controls all aspects of the inspection, and Plaintiff's expert indicates what he wishes to see, asks questions, and asks Defendant to demonstrate certain features of Defendant's systems.

7. Yet, even though there are no proportionality issues, monetary issues or human time issues that render the discovery at issue impermissible, Plaintiff has nevertheless offered to stipulate to certain facts and elements related to the merits of his claim and the class certification requirements of Rule 23, but Defendant has thus far declined the vast majority of Plaintiff's reasonable proposal. While Defendant made - on the eve of the filing of this Motion and with notice that Plaintiff was filing the next day – several offers of compromise, they are wholly inadequate, as they fail to provide Plaintiff with the discovery he requires and to which he and the Class are entitled. If anything, Defendant's proposal serves only to further evidence why the discovery at issue is required.

8. Absent such discovery, Plaintiff cannot prepare his expert witness report for class certification, let alone obtain the discovery and resulting evidence necessary to prove the Class' claims or obtain class certification. For these reasons, as set forth in detail below, the Court should grant Plaintiff's Motion.

9. Plaintiff notes that the undersigned and Defendant's counsel have held several phone calls, and exchanged several letters on the issues outlined below. And, Plaintiff will continue to attempt to resolve these issues during the briefing of this Motion, the hearing

requested below, and the Court's ruling, as applicable. However, because of upcoming deadlines and the importance of the issues at hand, Plaintiff is constrained to file this Motion.

## BACKGROUND

10. This class action concerns Defendant's practice of using an automatic telephone dialing system ("ATDS") to call individuals' cellular telephones without their express consent, in violation of the Telephone Consumer Protection Act ("TCPA"). To date, Defendant has not produced any evidence to suggest, let alone support, the notion that it had consent from Plaintiff or any class members to make such calls.

11. Based on this Court's Order (DE 70), the scope of discovery – and therefore the Class and Class Period - includes calls made by Defendant to leads it obtained from the Experian Program for the time period of October 6, 2011, through October 6, 2015.

12. To establish the elements of Plaintiff's and the Class' claim, Plaintiff must prove that Defendant's telephone dialing system is an ATDS as defined by and subject to the TCPA. To establish that an ATDS is subject to the TCPA, a plaintiff must show, *inter alia*, that is being used, or has "has **the capacity** to both: (1) store or produce telephone numbers to be called, using a random or sequential number generator, and (2) dial such numbers." *See* 47 U.S.C. § 227(a)(1)(emphasis added). "The FCC has expanded the definition of an ATDS to include predictive dialers, which utilize lists of phone numbers that the equipment dials without human intervention and then assists in predicting when an agent is available to take the call." *Wilcox v. Green Tree Servicing, LLC*, No. 8:14–cv–1681–T–24–TGW, 2015 WL 2092671, at *4 (M.D.Fla. May 5, 2015) (citing *In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991*, 2003 WL 21517853, at *46 (F.C.C. July 3, 2003). In July 10, 2015, the FCC further affirmed and explained the ATDS definition under the TCPA:

4

> We reaffirm our previous statements that dialing equipment generally has **the capacity** to store or produce, and dial random or sequential numbers (and thus meets the TCPA's definition of "autodialer") **even if it is not presently used for that purpose**, including when the caller is calling a set list of consumers. We also reiterate that predictive dialers, as previously described by the Commission, satisfy the TCPA's definition of "autodialer" for the same reason. We also find that callers cannot avoid obtaining consent by dividing ownership of pieces of dialing equipment that work in concert among multiple entities.

In the Matter of Rules & Regulations Implementing the Telephone Consumer Protection Act of 1991, 2015 WL 4387780, at *5–*6 (FCC July 10, 2015)("2015 FCC Ruling")(emphasis added).

13. Likewise, to obtain class certification, and to try the case, Plaintiff must establish the number of persons in the Class (Rule 23(a)(1), Fed.R.Civ.P.), as well as the ascertainability requirement. *E.g., Sanchez-Knutson v. Ford Motor Co.*, 310 F.R.D. 529, 534-35 (S.D. Fla. 2015).

14. Plaintiff's expert witness report is due on September 9, 2016, Plaintiff's Motion for Class Certification is due on January 3, 2017, and this matter is set for trial during the period commencing July 10, 2017. *See* July 21, 2016 Order (D.E. 83). The Court has not bifurcated class certification and merits discovery.

15. Defendant has disclosed that it called **987,347** persons at least one time, for which it obtained as a lead from the Experian Program, during the Class Period. *See* Defendant's Interrogatory Responses attached hereto as Exhibit B. During deposition, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See* Lang Depo., p 17, line 2-4, attached hereto as Exhibit C. Defendant also has information in its database that identifies which of the 987,347 persons Defendant's automatic dialer called at a number that Defendant identifies as a cell phone. Lang Dep. at p. 76, line 7 – p. 77, line 1.

5

16. In other words, Defendant has records from the Experian Program that detail, *inter alia*, the name and address of every person that it called, the number of times it called its person, the number of times it called each person, and whether Defendant identified the phone number called as a cell phone. Lang Dep. at p. 47, line 5 – 24; p. 68, lines 1-5; p. 48, line 2 – p. 49, line 3; p. 100, line 18 – p. 102, line 23; p. 65, line 4- p. 66, line 3; p. 70, line 5 – 22; p. 76, line 7 – p. 77, line 1

17. Defendant further described that ███████████████████████████████ ███████████████████████████████████████████████████. *See* Emerson Depo., p 70, line 7-12, attached hereto as Exhibit D.

18. Of these two groups, ██████████████████████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████ (Emerson Depo., p 40, line 16-23), ████████████████████████████████████████████ ██████████████████████ *See* Emerson Depo., p 38, line 9-18; p. 70, line 11-12.

19. Importantly, Defendant has refused to reveal how many of the 987,347 calls made by its automatic dialer were to cellular phones even though Defendant has such information in an easily accessible electronic format that it could produce with de minimis effort. Defendant has likewise refused to reveal whether it has already made such determination, whether in whole or in part.

20. Specifically, Defendant's corporate representative Kevin Lang testified in his deposition that ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████ (*Lang Depo.* at p. 66, line 1-3); ████████████ *Lang Depo* at p. 68, line 19-23); ████

███████████████████████████████ (*Lang Depo.* at *p.* 66, line 1-3); ███████████████ ███████ (*Lang Depo* at p 76, line 8-9). Plaintiff's expert, Jeff Hansen, has opined that the human time and computer time necessary to extract such information Defendant's archives to a spreadsheet and produce it to Plaintiff would take approximately **30-90** minutes. *See* Exhibit A at ¶ 14.

## REQUEST FOR INSPECTION

21.     On July 14, 2016, Plaintiff served Defendant with a request to inspect Defendant's telephone systems on August 18, 2016. *See* Request for Inspection attached hereto as Exhibit E. While such equipment is believed to be located in or near Detroit, Michigan, Plaintiff offered to conduct such inspection via a remote connection whereby, in short, Defendant could show Plaintiff's expert certain aspects of Defendant's systems.

22.     Plaintiff's requested inspection does not ask for or require, the alteration, destruction or inappropriate manipulation of any aspect of Defendant's systems. Importantly, Plaintiff and his expert expect that the inspection will require no more than **90** minutes. *See* Exhibit A at ¶ 14. Moreover, such inspection can be conducted pursuant to the parties' existing Confidentiality Agreement.

23.     Although Plaintiff requested by email on August 9, 2016 - during the 30 day time period in which Defendant is allowed to respond to the request - Defendant's position on the inspection, Defendant declined. *Id*. Instead, on August 16, 2016, Defendant interposed lengthy objections to every single aspect of the request, and maintains that it will not allow the inspection. *See* Defendant's Objections attached hereto as Exhibit F.

**REQUEST FOR DOCUMENTS AND INFORMATION**

24. Based on evidence learned from the 30(b)(6) depositions of Defendant's corporate representatives, and documents produced by Defendant, all of which occurred subsequent to the parties' previous motion practice and agreements on discovery issues, on July 14, 2016, Plaintiff contacted Defendant in writing to discuss Defendant's responses to Interrogatory No. 4 of Plaintiff's Second Set of Interrogatories (*see* Plaintiff's Second Set of Interrogatories attached hereto as Exhibit G), and Request for Production Nos. 8, 9, 10 and 11 of Plaintiff's Second Request for Production (*see* Plaintiff's Request for Production attached hereto as Exhibit H). *See* Plaintiff's July 14, 2016 Letter attached hereto as Exhibit M. In an effort to resolve the instant discovery disputes, Plaintiff explained that:

> "[t]his letter merely describes in greater detail the discovery sought, both at Defendant's invitation as set forth in its responses to the subject discovery requests and in the spirit of good faith and compromise to resolve discovery disputes. Further, to the extent this letter, either by explanation or the above or as stated herein, requests additional information, please treat this letter as a Request for Production and Interrogatory, as applicable."

*Id*.

25. The July 14 letter provided further detail and explanation on the discovery sought, referencing the deposition testimony of Defendant's corporate representatives. In short, Plaintiff explained that it required the actual numbers called; the number of times it called each cell phone number, during certain time periods within the Class Period, and during the Class Period as a whole. *Id*. Plaintiff further explained that "[t]his list <u>need not</u> include the name, address, or any other identifying information about the owner or user of the phone number. Further, Plaintiff and his counsel are <u>agreeable to entering an order that prohibits</u> Plaintiff and his counsel from attempting to dial or otherwise contact the owner or user of such phone numbers, and limiting the use of such information to issues of numerosity, prior to certification of the Class." *Id*. (emphasis added).

8

26.     Plaintiff also explained how the discovery might be produced. *Id*. ("Further, the term "report" means a single delimited text file containing both delimiters and qualifiers which are not contained in the data itself."). Defendant has declined to produce any of the discovery sought.

## REASONS TO COMPEL THE INSPECTION AND PRODUCTION

27.     Plaintiff recognizes that Defendant has offered to engage in sampling of the data to address the issues raised herein. And, Plaintiff also recognizes that this Court has expressed its concerns about proportionality in discovery. However, in this instance, Defendant's argument that sampling is a preferable alternative because of proportionality issues is without any support.  Moreover, Defendant's proposal is wholly inadequate.

28.     As detailed in Plaintiff's expert's affidavit, the human and computer time necessary for Defendant to extract and produce the data sought by Plaintiff is insignificant. It requires **2** hours of human and computer time, and likely less. *See* Exhibit A  ¶8.

29.     Moreover, given that Defendant has sole and exclusive access to the data, this Court should disregard any arguments or affidavits submitted by Defendant that suggest that the discovery sought is not available, or difficult or costly to retrieve. *See* Defendant's September 1, 2016 Letter attached hereto as Exhibit I. It would be patently unfair for Defendant to present such arguments while at the same time refusing to allow Plaintiff to inspect the systems and databases at issue to make his own determination and to respond to Defendant's argument.

30.     Similarly, given that Plaintiff must prove at trial that Defendant's automatic dialing system is subject to the TCPA, Plaintiff must be allowed to inspect Defendant's systems. Defendant has offered to allow Plaintiff to inspect the systems "**limited** to that sufficient to allow Plaintiff and his expert to see generally how outbound calls were placed to clients by

Quicken Loans' team members in connection with the Experian Program during the October 6, 2011 to October 5, 2011 time period." *See* Exhibit I (emphasis added). Of course, such "limited" inspection would not allow Plaintiff to see all of the components of Defendant's dialing system, such as the underlying software, databases, administrator access points, and other components, so that Plaintiff's expert may determine whether Defendant's automatic dialer "has **the capacity** to both: (1) store or produce telephone numbers to be called, using a random or sequential number generator, and (2) dial such numbers." *See* 47 U.S.C. § 227(a)(1)(emphasis added); *see also* 2015 FCC Ruling. Absent Defendant's stipulation that its automatic dialer is an ATDS subject to the TCPA, the inspection sought is the **only** way Plaintiff may determine if Defendant's systems does or has the capacity to work in a manner detailed by the FCC. Since Defendant has refused such stipulation, the Court should allow the discovery.

31.   Defendant's refusal to allow such inspection is akin to a product liability case where the product is in the exclusive control of the defendant and the plaintiff is denied the right to inspect it. There, and here, the plaintiff could never prove his case as the defendant would have sole and exclusive control of the evidence. Indeed, Defendant's arguments and evidentiary submissions about why its automatic dialer is not an ATDS subject to the TCPA would simply go unrebutted, as Plaintiff would not have access to the documents, information, data and evidence on which Defendant would – and has throughout this case – rely. Needless to say, this would run contrary to all case law, customs and rules of discovery and evidence. *E.g., Hunt v. 21st Mortgage Corp.*, 2013 WL 5230061 (N.D. Ala. Sept. 17, 2013)(allowing plaintiff to inspect defendant's equipment to determine if the equipment did not have the required software

for automatic dialing, despite defendant's argument that such inspection was neither permissible and necessary, and setting forth guidelines for the inspection).

32. Defendant has also relied thus far on two cases where the respective courts did not allow inspections of the defendants' computer systems. *See Bill v. NCO Fin. Sys., Inc.*, 2015 WL 5715402 (M.D. Fla. 2015) and *Al-Zaharnah v. Innovative Loan Serv. Co.*, 2015 WL 5897685 (M.D. Fla. 2015). However, unlike Bill, the instant inspection does not seek inspection of software no longer in use, does not require Defendant to shut down any business operations, will not improperly reveal private information to third parties, will not damage any equipment, and will not require inspections at multiple locations. Similarly, the same is true as to the *Al-Zaharna*h case.

33. Moreover, here, Plaintiff has already attempted to obtain the requested discovery through other means, such as the 30(b)(6) deposition as directed by the Court. As Defendant's representatives refused to admit that its automatic dialer is an ATDS subject to the TCPA, and likewise refused to answer questions about whether its dialer had the capacity to dial in a manner that would meet the FCC definition (*see* Lang Dep. at p. 96, line 18 – p. 99, line 13; p. 151, line 17 – p. 153, line 25), the only available means for Plaintiff to obtain the requested discovery is through an inspection.

34. Importantly, Plaintiff's expert believes, in good faith, that such inspection may be completed in **under 90 minutes**, and commits to the fact that it does not require the alteration or improper manipulation of Defendant's computer systems. *See* Exhibit A ¶16.

35. Ultimately, the only purpose of Defendant's refusal to allow the inspection, and efforts to force Plaintiff to accept a data sampling when the time and effort to produce all of the

11

data is essential the same, is to keep Plaintiff from the learning the facts that support the merits of Plaintiff's and the Class' claim and class certification.

36.     While there are times when compromise is appropriate in the course of discovery, the issues raised herein require that Plaintiff be afforded all of the discovery sought because the cost, time and burden to provide the discovery is the same, and it is the only way for Plaintiff to prove his claims and those of the Class, to obtain class certification and prepare for trial.

## **EFFORTS TO RESOLVE THE DISPUTE**

37.     Nevertheless, in an attempt to resolve this dispute, Plaintiff proposed a fair and reasonable stipulation as follows:

> Second, assuming *arguendo* that a stipulation as to numerosity is appropriate, Plaintiff's position includes the following:
>
> 1. Will Quicken represent in writing to Plaintiff and the Court that Quicken (including of course Quicken itself, counsel, experts, etc.) has neither determined nor made any effort to determine, whether by approximation or exact numbers, the total number of potential class members, whether based on the totality of class members included in the period defined by the Court (i.e., all calls to the cell phones of leads from the Experian Program from October 6, 2011 through October 6, 2015 – i.e., the "Class Period") or any subpart(s) thereof?
>
> 2. Will Quicken stipulate that:
>
> (a) the number of phone calls Quicken placed to cell phones from leads it received from the Experian Program using Quicken's telephone dialing system during the Class Period is sufficient to satisfy the numerosity requirement of Federal Rule 23(a).
>
> (b) the number of phone calls Quicken placed to cell phones of non-FHA leads received from the Experian Program using Quicken's telephone dialing system during the Class Period is sufficient to satisfy the numerosity requirement of Federal Rule 23. *See* Emerson Deposition p. 38 line 9-18; p 70, line. 11-12; p. 71 line 24 – p. 72, line. 1.
>
> (c) the number of phone calls Quicken placed to cell phones of FHA leads it received from the Experian Program using Quicken's telephone dialing system during the class period is sufficient to satisfy the numerosity requirement of Federal Rule 23(a). *See* Emerson Deposition p. 16, line 12-17.

    (d) the number of phone calls Quicken placed to cell phones of FHA leads received from the Experian Program using Quicken's telephone dialing system during the time period prior to when Quicken employed any scrubbing technology is sufficient to satisfy the numerosity requirement to Federal Rule 23 (which Mr. Emerson's testimony indicates was the start of the class period through September 2012). *See* Emerson Deposition p. 40, line. 16-23.

    (e) the number of phone calls Quicken placed to cell phones of FHA leads received from the Experian Program using Quicken's telephone dialing system from the time Quicken began scrubbing cell phone numbers through the end of the class period (*i.e.*, October 6, 2015). *See* Emerson Deposition, p 40, line. 7-15.

3. Is Quicken willing to include in a stipulation something about the size of the Class, and the subparts of the Class, as outlined above, and if so what? Plaintiff's position is that the Court must be provided with at least an approximation of the size of the Class, as opposed to simply a bare stipulation.

*See* August 23, 2016 Letter to Defendant's Counsel attached hereto as Exhibit J. To date, Defendant has yet to respond or agree to the proposed stipulations.

    38.    Similarly, Plaintiff also proposed that Defendant stipulate to the elements of Plaintiff's claims, which necessitate the need for the inspection. Specifically, Plaintiff requested as follows:

> Quicken's position leaves Plaintiff with no choice but to move the Court to compel the inspection, unless Quicken is willing to stipulate for purposes of this case, for class certification and for trial, that Quicken placed all calls to all leads received from the Experian Program, during the Class Period, using an automated telephone dialing system as defined by and subject to the Telephone Consumer Protection Act, 47 U.S.C. § 227 et seq., and that all such calls were made for non-emergency purposes.

*Id*. To date, Defendant declined to agree to any aspect of Plaintiff's proposed stipulations, save one minor and wholly inadequate proposal.

    39.    Specifically, on September 1, 2016, Defendant offered to stipulate as follows:

> In connection with the Experian Program, Quicken Loans placed outbound calls through its Cannon and LOLA technologies to more than 100 different persons during the time period of October 6, 2011 through October 6, 2015.

13

*See* Exhibit I at 3. And, Defendant offered to provide call records for 150 clients randomly selected by Defendant to whom Quicken Loans placed outbound calls through its Cannon and LOLA technologies during the time period of October 6, 2011 through October 6, 2015. *Id*. at 3.

40.     Defendant's proposal is inadequate for several reasons. First, and most importantly, the time and cost required for Defendant to produce all of the data sought by Plaintiff is the same as that required for Defendant to produce the miniscule subset of data it proposes. The only benefit of Defendant's proposal is to keep from Plaintiff the evidence he needs to certify the Class. (While the Court's review of this issue should end here, and the Court should allow Plaintiff all of the discovery sought, Plaintiff is constrained to detail the balance of the failings in the proposed stipulation.)

41.     Second, the proposed stipulation fails to state whether the 100 calls where made to cell phones. Third, it is Defendant that is randomly selecting the 150 call records that Plaintiff will receive. This of course allows Defendant to cherry pick the calls, and does not provide a statistically significant sample.

42.     Fourth, the proposal ignores that during the Class period ████████ ████████████████████████████████████████ ████████████████████████ October 2011 to September 2012, and then again from August 15, 2015 – October 9, 2015. Thus, while it is virtually certain that Defendant used its automatic dialer to call cell phones during such time periods, as it did when it called Plaintiff, the proposal does not address these issues.

43.     Defendant's refusal to allow Plaintiff's requested inspection or produce the discovery sought also has thwarted Plaintiff's efforts to prepare for class certification, including

14

but not limited to complying with the July 21, 2016 deadline to serve Plaintiff's expert witness report for class certification. Plaintiff's expert cannot properly opine about databases and computer systems which he has not seen. At the same time, it would be patently unfair to allow Defendant and its experts to offer argument and evidence about such systems while at the same time denying Plaintiff access to the same material. Thus, Plaintiff respectfully requests that the Court extend the time for Plaintiff to serve his expert witness report until 30 days after the discovery at issue herein is complete.

## TRANSCRIPTS FROM PRIOR TCPA CASES AGAINST DEFENDANT

44. Early on in this case, Plaintiff sought in discovery the transcripts from depositions of Defendant's representatives given in TCPA cases where the issues include whether the dialing system at issue here is an ATDS subject to the TCPA. *See* Plaintiff's First Request For Production ¶ 18, attached hereto as Exhibit K. One such case is *Legg v. Quicken Loans, Inc.*, 2015 WL 897476 (S.D.Fla. Feb. 25, 2015), which was litigated in the Southern District of Florida. After the filing of a motion to compel, Defendant agreed to produce redacted transcripts from the *Legg* case, and did so on April 15, 2016. However, the excerpts produced of Mr. Lang's deposition contain only 3 pages, which are almost completely redacted. *See* Redacted Transcript attached hereto as Exhibit L.

45. On June 30, 2016, Plaintiff deposed Mr. Lang and discovered, inter alia, that in the Legg case he was deposed for several hours on topics identical to those at issue here, that Defendant's automatic dialing systems have been used for all of Defendant's lead programs during the Class Period, that the system has remained unchanged during the Class Period. *See* Lang at p. 8, line 1- p. 11, line 24; p. 21, line 23 – p. 27, line 25; p. 141, lines 9-16, Exhibit C.

Plaintiff likewise discovered in deposition in this case that Defendant's representative Mr. Emerson testified for a full day in Legg. *See* Emerson Dep. at P. 13, line 1 – 19, Exhibit D.

46. In an attempt to resolve the issue, Plaintiff requested that Defendant revisit the Legg transcripts, and produce all of the relevant pages. Defendant initially declined. *See* Exhibit I. However, once on notice that Plaintiff was filing this Motion, Defendant offered to revisit the transcripts from Legg and produce unredacted portions of the transcript discussing the technologies at issue here. But, Defendant conditioned its offer on the Plaintiff's agreement to never revisit the issue again. *Id*.

47. Putting aside why such discovery was not produced at the outset, Defendant's condition is unacceptable. Indeed, were it not for the deposition of Mr. Lang taken in this case, Plaintiff would never have discovered that Defendant likely did not produce all of the discoverable deposition testimony from Legg. Plaintiff should not be restricted from revisiting the issue again should it learn from other sources that Defendant has additional discovery that it has withheld from production. Thus, Defendant should be required to produce unredacted transcripts from Legg and all other cases where Defendant's representatives testified about the same technologies at issue here, as Plaintiff requested and Defendant previously agreed.

## REQUEST FOR ORAL ARGUMENT

Pursuant to Local Rule 7.1(b)(2), S.D.Fla.L.R., Plaintiff requests oral argument on the issues raised herein. The discovery sought by Plaintiff is critical to Plaintiff's ability to prove the elements of Plaintiff's and the Class' claims on the merits, to establish the requirements for class certification under Rule 23, Fed.R.Civ.P., and for determining the Class' damages for trial. Moreover, this Court's practice in this case has been to hold hearings on discovery issues, and the materiality and importance of these issues warrants such a hearing.

## CERTIFICATE OF GOOD FAITH

Pursuant to Local Rule 7.1(a)(3), S.D.Fla.L.R., Plaintiff's counsel, the undersigned, certifies that Plaintiff's counsel conferred with Defendant's counsel via phone, letter and email in a good faith effort to resolve the issues raised herein.

Respectfully submitted,

**WITES & KAPETAN, P.A.**
4400 North Federal Highway
Lighthouse Point, FL 33064
954-570-8989/954-354-0205 (fax)

By: **/s/ Marc A. Wites**
MARC A. WITES
Fla. Bar No.: 24783
mwites@wklawyers.com

STEVEN C. HOLZMAN
Fla. Bar No. 667617
scholzman@gmail.com
**LAW OFFICES OF STEVEN C. HOLZMAN**
4400 North Federal Highway
Lighthouse Point, FL  33064
Phone: 561-789-5366

*Attorneys for Plaintiff and the Class*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on September 2, 2016, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send an electronic notice to the authorized CM/ECF filers listed below, and sent same via email to:

Andrew Kemp-Gerstel, Melissa Diane Goolsarran
Liebler, Gonzalez & Portuondo PA
44 W Flagler Street, 25th Floor
Miami, FL 33130-4329
305-379-0400/Fax: 305-379-9626
Email: akg@lgplaw.com, mdg@lgplaw.com

W. Kyle Tayman (admitted *pro hac vice*)
Brooks R. Brown (admitted *pro hac vice*)

17

GOODWIN PROCTER LLP
901 New York Avenue NW
Washington, DC 20001
Tel: 202-346-4000/Fax: 202-346-4444
bbrown@goodwinprocter.com; ktayman@goodwinprocter.com

                                                **/s/ *Steven C. Holzman***
                                                Steven C. Holzman